[948 NE2d 425, 924 NYS2d 1]

In the Matter of ROBERT P. MEEGAN, JR., Individually and as President of the Buffalo Police Benevolent Association, et al., Respondents, v BYRON W. BROWN, Mayor of the City of Buffalo, et al., Appellants.

In the Matter of JOSEPH E. FOLEY, Individually and as President of the Buffalo Professional Firefighters Assoc., Inc., Local 282, IAFF, AFL-CIO-CLC, et al., Respondents, v BYRON W. BROWN, Mayor of the City of Buffalo, et al., Appellants.

BUFFALO TEACHERS FEDERATION, INC., NYSUT, et al., Respondents, v BUFFALO BOARD OF EDUCATION FOR CITY SCHOOL DISTRICT OF CITY OF BUFFALO et al., Appellants.

Argued February 9, 2011; decided March 29, 2011

POINTS OF COUNSEL

*Goldberg Segalla LLP*, Buffalo (*Matthew C. Van Vessem* of counsel), and *Jaeckle Fleischmann & Mugel, LLP* (*Scott P. Horton* of counsel) for Byron W. Brown and another, appellants. I. The plain language of the Buffalo Fiscal Stability Authority Act requires reversal of the decision of the Appellate Division. (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *Gletzer v Harris*, 12 NY3d 468; *Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of Tonis v*

*Board of Regents of Univ. of State of N.Y.*, 295 NY 286; *Zion v Kurtz*, 50 NY2d 92, 1060; *Mangam v City of Brooklyn*, 98 NY 585; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39; *Matter of Board of Coop. Educ. Servs. of Rockland County v New York State Pub. Empl. Relations Bd.*, 41 NY2d 753; *Board of Educ. of Yonkers City School Dist. v Cassidy*, 59 AD2d 180.) II. The public purposes and remedial nature of the Buffalo Fiscal Stability Authority Act compel reversal of the decision of the Appellate Division. (*Matter of Hogan v Culkin*, 18 NY2d 330; *Ferres v City of New Rochelle*, 68 NY2d 446; *People v Ryan*, 274 NY 149; *Matter of River Brand Rice Mills, Inc. v Latrobe Brewing Co.*, 305 NY 36; *Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d 246; *Matter of Chase Natl. Bank v Guardian Realties, Inc.*, 283 NY 350.) III. The decision of the Appellate Division, if affirmed, imposes a financial obligation on the City of Buffalo that compels re-examination of Buffalo Fiscal Stability Authority Resolution No. 07-21.

*Harris Beach PLLC*, Pittsford (*A. Vincent Buzard* and *Laura W. Smalley* of counsel), for Buffalo Fiscal Stability Authority, appellant. The language of the Buffalo Fiscal Stability Authority Act, which provides that wage increases, steps and increments are "suspended" during the wage freeze and that such "retroactive pay adjustments" do not "accrue" during the freeze, makes clear that multiple increases are not to be reinstated immediately after the freeze is lifted. (*Robbins v County of Broome*, 87 NY2d 831; *DiMaio v Pozefsky*, 35 AD3d 1136; *Jones v Bill*, 10 NY3d 550; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Roth v Michelson*, 55 NY2d 278; *People v Boston*, 75 NY2d 585; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *Riley v County of Broome*, 95 NY2d 455; *Gletzer v Harris*, 12 NY3d 468; *Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160.)

*Damon & Morey LLP*, Buffalo (*James N. Schmit* and *Michael J. Willett* of counsel), and *Michael J. Looby, General Counsel, Buffalo Public Schools*, for Buffalo Board of Education for City School District of the City of Buffalo and another, appellants. The clear language of the Buffalo Fiscal Stability Authority Act establishes, as a matter of law, that step increases and increments did not accrue during the wage freeze. (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *Riley v County of Broome*, 95 NY2d 455; *Gletzer v Harris*, 12 NY3d 468; *Matter of Tonis v Board of Regents of Univ. of State of N.Y.*, 295 NY 286;

*Matter of Rodriguez v Perales*, 86 NY2d 361; *Matter of Albano v Kirby*, 36 NY2d 526; *White Plains Parking Auth. v State of New York*, 180 AD2d 729; *Acme Bldrs. v County of Nassau*, 36 AD2d 317, 31 NY2d 924; *Matter of SIN, Inc. v Department of Fin. of City of N.Y.*, 71 NY2d 616; *Board of Educ. of Yonkers City School Dist. v Cassidy*, 59 AD2d 180.)

*W. James Schwan, II*, Buffalo, for Robert P. Meegan, Jr., and another, respondents. I. The decisions of the courts below are compelled by the language of statute. II. Appellants' interpretation of the statute is contrary to its plain meaning. (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *Bertoldi v State of New York*, 275 AD2d 227; *Matter of David Assoc. [Bevona]*, 109 AD2d 623; *Board of Educ., Farmingdale Union Free School Dist. v Farmingdale Fedn. of Teachers*, 92 AD2d 599; *Mark v Board of Higher Educ. of City of N.Y.*, 303 NY 154; *Samiento v World Yacht Inc.*, 10 NY3d 70; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105; *Commonwealth of Pa. v Brown*, 260 F Supp 323.) III. Appellants' interpretation of the statute results in an unconditional impairment of the Buffalo Police Benevolent Association's contract. (*Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39, 940 F2d 766; *Condell v Bress*, 983 F2d 415.) IV. The lifting of the wage freeze as implemented by the City resulted in absurd results.

*Creighton, Johnsen & Giroux*, Buffalo (*E. Joseph Giroux, Jr.*, and *Jonathan G. Johnsen* of counsel), for Joseph Foley and another, respondents. I. The plain language of Public Authorities Law § 3858 (2) (c) provides that, during a control period, the Buffalo Fiscal Stability Authority is empowered only to suspend but not to eliminate increases to wages. (*Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y.*, 63 AD3d 1316; *Buffalo Teachers Fedn. v Tobe*, 464 F3d 362.) II. The plain language of Public Authorities Law § 3858 (2) (c) (iii) prohibits only "retroactive pay adjustments" to "accrue or be deemed to accrue during the period of wage freeze" and does not affect the implementation of the suspended wage increases. (*Kahmann v Reno*, 967 F Supp 731; *Annacchino v Annacchino*, 61 Misc 2d 636.)

*Bredhoff & Kaiser, P.L.L.C.* (*Andrew D. Roth*, of the District of Columbia bar, admitted pro hac vice, of counsel), *Office of General Counsel, New York State United Teachers*, Buffalo (*Robert W. Klingensmith, Jr.*, of counsel), *James R. Sandner*, Latham,

*Kevin H. Haren* and *Alice M. O'Brien,* Washington, D.C., for Buffalo Teachers Federation, Inc., and others, respondents. I. The courts below were correct in adopting the union's interpretation of the Buffalo Fiscal Stability Authority (BFSA) Act's wage freeze provisions and in rejecting the BFSA's current, contrary interpretation. (*Matter of DaimlerChrysler Corp. v Spitzer,* 7 NY3d 653; *Matter of New York State Correctional Officer & Police Benevolent Assn., Inc. v New York State Dept. of Correctional Servs.,* 66 AD3d 1291; *Bertoldi v State of New York,* 275 AD2d 227; *Matter of David Assoc. [Bevona],* 109 AD2d 623; *Board of Educ., Farmingdale Union Free School Dist. v Farmingdale Fedn. of Teachers,* 92 AD2d 599; *Mark v Board of Higher Educ. of City of N.Y.,* 303 NY 154; *Samiento v World Yacht Inc.,* 10 NY3d 70; *Friedman v Connecticut Gen. Life Ins. Co.,* 9 NY3d 105; *Commonwealth of Pa. v Brown,* 260 F Supp 323; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451.) II. This Court should reject the Buffalo Fiscal Stability Authority's (BFSA) new argument based on section 3872 of the BFSA Act. (*Bingham v New York City Tr. Auth.,* 99 NY2d 355.) III. Contrary to the City of Buffalo's argument, this matter need not, under any circumstances, be "remanded to the Buffalo Fiscal Stability Authority for reconsideration."

*Jay Worona,* Latham, and *Kimberly A. Fanniff* for New York State School Boards Association, Inc., amicus curiae. The lower court's interpretation of Public Authorities Law § 3858 (2) (c) improperly ignores both the plain language of the statute and its stated purpose. (*Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270; *Matter of DaimlerChrysler Corp. v Spitzer,* 7 NY3d 653; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *People v Finnegan,* 85 NY2d 53; *Matter of Anderson v Board of Educ. of City of Yonkers,* 46 AD2d 360, 38 NY2d 897; *People v Munoz,* 207 AD2d 418, 84 NY2d 938; *Matter of Gibson v Board of Educ. of Watkins Glen Cent. School Dist.,* 68 AD2d 967, 52 NY2d 1053; *Matter of Terino v Levitt,* 44 AD2d 167; *Matter of Tonis v Board of Regents of Univ. of State of N.Y.,* 295 NY 286; *Matter of Albano v Kirby,* 36 NY2d 526.)

*Harter Secrest & Emery LLP,* Buffalo (*Carol E. Heckman* and *A. Paul Britton* of counsel), for Buffalo Niagara Partnership, amicus curiae. I. The language of the Buffalo Fiscal Stability Authority Act requires a determination that no step increases, percentage wage increases, or increments can be deemed to have accrued during the period of the wage freeze. (*Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270; *Matter of Daimler-*

*Chrysler Corp. v Spitzer*, 7 NY3d 653; *Matter of Bath & Hammondsport R.R. Co. v New York State Dept. of Envtl. Conservation*, 73 NY2d 434; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105; *New York State Correctional Officer & Police Benevolent Assn., Inc. v New York State Dept. of Correctional Servs.*, 66 AD3d 1291; *Bertoldi v State of New York*, 275 AD2d 227; *Matter of David Assoc. [Bevona]*, 109 AD2d 623; *Board of Educ., Farmingdale Union Free School Dist. v Farmingdale Fedn. of Teachers*, 92 AD2d 599; *Mark v Board of Higher Educ. of City of N.Y.*, 303 NY 154; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95.) II. The Buffalo Fiscal Stability Authority Act should be construed consistently with the patent intent of the Legislature. (*Buffalo Teachers Fedn. v Tobe*, 464 F3d 362; *Blanco v American Tel. & Tel. Co.*, 90 NY2d 757; *Lesser v Park 65 Realty Corp.*, 140 AD2d 169; *Matter of Industrial Commr. of State of N.Y. v Five Corners Tavern*, 47 NY2d 639; *Matter of New York Life Ins. Co. v State Tax Commn.*, 80 AD2d 675, 55 NY2d 758.)

## OPINION OF THE COURT

PIGOTT, J.

In 2003, because of concern for the City of Buffalo's financial problems, the Office of the State Comptroller conducted a review of the City's finances and issued a report, concluding that the City had been operating with a deficit for many years and was only able to fund its operations because of increasing state aid and by using its reserves. Based on these and other findings, the Comptroller proposed legislation to establish a City of Buffalo Oversight and Recovery Board whose mission was to ensure effective long-term restructuring of the City's fiscal condition.

In response, the State Legislature created the Buffalo Fiscal Stability Authority (BFSA), a public benefit corporation, to assist in achieving fiscal stability in the City by the 2006-2007 fiscal year (*see* Public Authorities Law § 3857 [1]). The Legislature stated,

> "It is hereby found and declared that the city [of Buffalo] is in a state of fiscal crisis, and that the welfare of the inhabitants of the city is seriously threatened. The city budget must be balanced and economic recovery enhanced. Actions should be undertaken which preserve essential services to city residents, while also ensuring that taxes remain affordable. Actions contrary to these two essential goals jeopardize the city's long-term fiscal health

and impede economic growth for the city, the region, and the state" (L 2003, ch 122, § 1).

Among other powers, the BFSA was authorized to impose a wage freeze upon finding that such a freeze was essential to the adoption or maintenance of a city budget or financial plan (*see* Public Authorities Law § 3858 [2] [c] [i]). In April 2004 it did just that, determining "that a wage freeze, with respect to the City and all Covered Organizations, is essential to the maintenance of the Revised Financial Plan and to the adoption and maintenance of future budgets and financial plans that are in compliance with the Act." (Buffalo Fiscal Stability Authority Resolution No. 04-35 [Apr. 21, 2004], available at http://www.bfsa.state.ny.us/meetings2004/resolutions/res0435.pdf.) The freeze, effective April 2004, prevented any increase in wages, including increased payments for salary adjustments according to "plan and step-ups or increments" (*id.*).

The freeze was lifted in July 2007, whereupon the BFSA and the City indicated that city employees would immediately be entitled to a one-step increase in salary and wages. The Unions objected, however, contending that the employees were entitled to advance the four salary steps that they would have received had the freeze not been imposed.

## I.

In 2007, petitioners and plaintiffs (hereinafter the Unions) commenced these CPLR article 78 and declaratory judgment proceedings and action against respondents (hereinafter the City) challenging, among other things, the suspension of step-up plan wage increases. Supreme Court granted the petitions, finding that Public Authorities Law § 3858 (2) (c) (iii) applies only to wages lost during the freeze and not to longevity and promotional steps provided in the various contracts between the City and its unions and therefore petitioners were "entitled to their previously negotiated wage increase benefits going forward immediately." (2007 NY Slip Op 33683[U], *5 [2007].)

The City appealed. The Appellate Division affirmed for essentially the same reasons as Supreme Court (63 AD3d 1673 [4th Dept 2009]). This Court granted leave and we now reverse.

## II.

Public Authorities Law § 3858 (2) provides, in relevant part:

"In carrying out the purposes of this title during any control period, the [BFSA]: . . .

"(c) may impose a wage and/or hiring freeze: (i) During a control period, upon a finding by the [BFSA] that a wage and/or hiring freeze is essential to the adoption or maintenance of a city budget or a financial plan that is in compliance with this title, the [BFSA] shall be empowered to order that all increases in salary or wages of employees of the city and employees of covered organizations which will take effect after the date of the order pursuant to collective bargaining agreements . . . now in existence or hereafter entered into, requiring such salary or wage increases as of any date thereafter are *suspended.* Such order may also provide that all increased payments for . . . *salary adjustments according to plan and step-ups or increments for employees of the city and employees of covered organizations which will take effect after the date of the order pursuant to collective bargaining agreements . . .* requiring such increased payments as of any date thereafter are, in the same manner, suspended. . . .

"(iii) Notwithstanding the provisions of subparagraphs (i) and (ii) of this paragraph, *no retroactive pay adjustments of any kind shall accrue or be deemed to accrue during the period of wage freeze,* and no such additional amounts shall be paid at the time a wage freeze is lifted, or at any time thereafter" (emphasis added).

The City argues that under section 3858 (2) (c) (i) and (iii), contractual salary increases, step increases, and other pay adjustments were suspended and did not accrue during the wage freeze period and that, therefore, the union members were only entitled to a one-step increase—rather than four step increases—once the wage freeze ended. The Unions, on the other hand, acknowledge that the act prohibits the accrual of retroactive pay, but argue that their members accrued service credit in the step-salary plan and, upon the lifting of the wage freeze, should receive those salary step increases.

Both parties argue that the plain language of the statute supports their position. In our view, neither interpretation is unreasonable. Ultimately, however, the interpretation proffered by the City most comports with the meaning and purpose of the statute.

The legislation plainly permits the BFSA to suspend all salary and wage increases, including any "step-ups" and "increments"

(Public Authorities Law § 3858 [2] [c] [i]). It further provides that "no retroactive pay adjustments *of any kind* shall accrue or be deemed to accrue during the period of wage freeze" (§ 3858 [2] [c] [iii] [emphasis added]). The term "retroactive pay adjustments of any kind" must be read broadly. Subdivision (2) (c) (iii) refers back to (2) (c) (i), which defines the type of adjustments, including differentials, step-ups and increments, that the BFSA is empowered to suspend. Thus, the Legislature's use of the term "accrue" in subparagraph (iii) provides further evidence of its intent under subparagraph (i) that step increases and increments were suspended and did not accrue during the wage freeze.

## III.

While examining the specific language of statutory provisions is part of our inquiry, we must also look to the underlying purpose and the statute's history as "[w]e are mindful that in 'the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle' " (*Ferres v City of New Rochelle*, 68 NY2d 446, 451 [1986] [emphasis omitted], quoting *People v Ryan*, 274 NY 149, 152 [1937]).

Public Authorities Law § 3850-a sets forth the Legislature's intent. In that provision, the Legislature declared that the "maintenance of a balanced budget by the city of Buffalo is a matter of overriding state concern." This remedial legislation was enacted to provide the City of Buffalo with "long-term fiscal stability," ensuring confidence of investors in the City's bonds and notes and to protect the economy of the region (*id.*). The act further provides that "[t]he provisions of this title shall be liberally construed to assist the effectuation of the public purposes furthered hereby" (*id.* § 3873). Thus, the entire purpose of the statute was to place the City of Buffalo on sound financial ground over the long term. In order to accomplish such purpose, BFSA was empowered to freeze wages and salary increments until the City's growth and stability were renewed. The intent of the statute supports the City's position.

Accordingly, the order of the Appellate Division should be reversed, with costs, the amended petitions in *Matter of Meegan v Brown* and *Matter of Foley v Brown* dismissed, and judgment granted to defendants in *Buffalo Teachers Federation, Inc. v Buffalo Board of Education for City School District of City of Buffalo* declaring in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order reversed, etc.